**Tagged**



**ORDERED in the Southern District of Florida on May 30, 2007.**

Steven H. Friedman, Judge
United States Bankruptcy Court

___

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**West Palm Beach Division**

| | |
|---|---|
| IN RE: | Case No. 04-34338-BKC-SHF |
| | Chapter 7 Proceeding |
| ANDREW J. GAUTHIER, | |
| TERRI L. GAUTHIER a/k/a | |
| TERRI L. NADEL, | |
|         Debtors.         / | |
| PATRICIA DZIKOWSKI, TRUSTEE | Adv. Pro. No. 06-1113-BKC-SHF-A |
|         Plaintiff, | |
| vs. | |
| ANDREW J. GAUTHIER, | |
| TERRI L. GAUTHIER; FRANK SCHIAVO, | |
| SCOTT MCQUADE, MICHAEL NADEL, | |
| BARRY EISEN, HENRY GAUTHIER, | |
| JERALDINE STEINMANN; AND | |
| CRARY, BUCHANAN, BOWDISH, BOVIE | |
| BERES, ELDER, THOMAS, CHARTERED, | |
|         Defendants.         / | |

## MEMORANDUM OPINION

**THIS CAUSE** came before the Court for trial on October 24, 2006 on the Complaint Objecting to the Debtors' Claim of Exempt Property; Objecting to Debtors' Discharge; to Avoid

Unauthorized Post-Petition Transfers; and For a Money Judgment filed by Patricia Dzikowski, the chapter 7 trustee ("trustee"). A review of the record before the Court, as well as the Pretrial Order (C.P. 101), identifies those counts of the trustee's twelve-count complaint remaining at issue to be Counts I-IV, XI, and XII. The Court, having considered the testimony of the witnesses, the documentary evidence presented by the parties, the candor and demeanor of the witnesses, the underlying pleadings, and being otherwise fully advised in the premises, **sustains** the trustee's objection to the debtor's claimed homestead exemption, **denies** the debtors' discharge pursuant to 11 U.S.C. §§ 727 (a)(2) and (a)(4), **avoids** a post-petition transfer from the debtors to Crary, Buchanan, Bowdish, Bovie, Beres, Elder & Thomas, Chartered in the amount of **$5,000** and enters a money judgment against the debtors in the amount of **$90,990.32**.

      The debtors, Andrew J. Gauthier and Terri L. Gauthier, filed a voluntary chapter 7 petition on September 15, 2004. Contemporaneously, Patricia Dzikowski was appointed chapter 7 trustee, and she continues to serve in that capacity. The debtors, in Schedule A. of their bankruptcy schedules, claim a homestead exemption, pursuant to Article X, Section 4 of the Florida Constitution, in real property located at 2950 SE Dalhart Road, Port St. Lucie, Florida ("Dalhart Road property"). The debtors amended their schedules on January 6, 2005 (C. P. 21 - Case No. 04-34338-BKC-SHF) to reflect that they did not own any real property, but instead owed an interest in a financial account at Washington Mutual Bank, Account No. 489-359442-8, with a balance of $87,697.28, ostensibly representing the exempt proceeds from the sale of the Dalhart Road property. The debtors testified that on September 1, 2004, and prior to the filing of their chapter 7 petition, the debtors sold their ownership interest in the Dalhart Road property. The debtors received net proceeds from the closing in the amount of $90,990.32 (Pl. Ex. 3). On September 6, 2005, this Court entered its Agreed Order Extending the Time for the Trustee to Object to the Debtors' Discharge and to Object to the Debtors' Claim of Exempt Property and Directing Turnover of Sales Proceeds ("Turnover Order" - C. P. 42), whereby the debtors were directed to turn over

the net proceeds derived from the sale of the Dalhart Road property or to provide an accounting of any expended sale proceeds. To date, the debtors have failed to turn over any proceeds to the trustee. At trial, the debtors acknowledged that all of the net proceeds had been expended on miscellaneous living expenses and outstanding debts (Pl. Ex. 5).

## COUNT I: OBJECTION TO THE DEBTORS CLAIM OF EXEMPT PROPERTY

The trustee objects to the debtors' claimed exemption as to the Dalhart Road property, or as to financial accounts containing the proceeds from the sale of the real property. The trustee contends that the debtors did not manifest an intention, as of the petition date, to permanently reside in the Dalhart Road property, and in addition, did not manifest an intention to reinvest the net sales proceeds of the Dalhart Road property in a replacement homestead property.

The debtors testified that they met with the law firm of Crary, Buchanan, Bowdish, Bovie, Beres, Elder & Thomas, Chartered ("Crary Buchanan") in November 2003 for the purpose of discussing the filing of their bankruptcy petition. They advised Crary Buchanan that they would not be ready to file a bankruptcy petition until August 2004 and further explained that when they signed the original bankruptcy petition and schedules, they post-dated the petition to September 3, 2004, the date upon which they believed the closing on the Dalhart Road property would occur. However, due to an impending hurricane, the closing on the Dalhart Road property was moved up to September 1, 2004 (Pl. Ex. 3). Consequently, the sale of their homestead actually occurred prior to the date reflected on their bankruptcy petition and schedules. Subsequently, the debtors amended their bankruptcy schedules on January 6, 2005 (C. P. 21) to reflect that they did not own any interest in real property, but instead held an interest in a Washington Mutual Bank account containing $87,697.28 in sale proceeds. The debtors claimed the sale proceeds as exempt property on their Amended Schedule C.

The debtors claim to have had full intention to reinvest the proceeds from the sale of the Dalhart Road property. They testified that they met with realtors and mortgage companies, but that

they were unsuccessful in securing a new homestead due to the pendency of their bankruptcy. They contend that their previous counsel advised that they could utilize the homestead proceeds for necessary living expenses. As a result, the debtors testified that they utilized all of the homestead proceeds for payment of personal loans, gifts to friends and family members, home rental and other living expenses, and legal fees.

Pursuant to *Orange Brevard Plumbing & Heating Co. vs. La Croix*, 137 So.2d 201 (Fla. 1962), the exemption accorded Florida homestead owners also extends to the proceeds of a voluntary sale of a homestead when it is intended in good faith that such proceeds are to be reinvested in a new homestead. The language of the opinion in *Orange Brevard* clearly indicates that the exemption of homestead proceeds is conditioned on the intention to reinvest in another homestead:

> [W]e hold the proceeds of a voluntary sale of a homestead to be exempt from the claims of creditors just as the homestead itself is exempt if, and only if, the vendor shows, by a preponderance of the evidence an abiding good faith intention prior to and at the time of the sale of the homestead to reinvest the proceeds thereof in another homestead within a reasonable time. Moreover, only *so much* of the proceeds of the sale as are intended to be reinvested in another homestead may be exempt under this holding.

*Id*. at 206.

If the debtors in the instant case had held the subject funds for investment in a new homestead, the funds clearly would be exempt under *Orange Brevard*. With the exception of the debtors' testimony offered at trial that they intended to reinvest the proceeds in homestead property, there is no evidence that the debtors had any intent other than to utilize the funds for their personal use and living expenses, as reflected by the "ITEMIZED LIST OF EXPENSES-FROM SALE OF HOUSE" (Pl. Ex. 5). As such, the Court **sustains** the Trustee's Objection to the Debtors' Claim of Exempt Property.

**COUNT II: OBJECTION TO DISCHARGE, PURSUANT TO 11 U.S.C. § 727(a)(2)**

The trustee seeks the denial of the debtors' discharge pursuant to 11 U.S.C. § 727(a)(2)(A). The trustee alleges that the debtors, with the intent to hinder, delay or defraud creditors and the trustee, have transferred, removed, and concealed property of the bankruptcy estate pre-petition. The trustee, as the plaintiff, bears the burden of demonstrating actual fraudulent intent. *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 306 (11th Cir. 1994). A finding of actual fraudulent intent may be based on circumstantial evidence or inferred from the surrounding facts and circumstances. *Future Time, Inc. v. Yates,* 26 B.R. 1006, 1007 (M.D. Ga.), *aff'd* 712 F.2d 1417 (11th Cir. 1983).

The trustee asserts that the debtors' discharge should be denied under § 727(a)(2)(A) on the basis that the debtors transferred property of the bankruptcy estate because they knew or should have known that the they had no legitimate basis to claim the Dalhart Road property, or the proceeds that flowed from the sale of the property, as exempt as of the petition date. The trustee must prove by a preponderance of the evidence that: **(1)** a transfer occurred; **(2)** the transfer was of debtor's property; **(3)** the transfer was within one year of the petition; and **(4)** the transfer was done with the intent to hinder, delay, or defraud a creditor or the trustee. *In re Chauncey*, 454 F.3d 1292 (11th Cir. 2006); *Shappell's Inc. v. Perry (In re Perry),* 252 B.R. 541, 547 (Bankr.M.D.Fla. 2000).

The debtors assert that on the day they presented the bankruptcy petition and schedules to their former attorney, September 3, 2004 (which is the date inscribed on the debtors' petition and original schedules and statements), the closing on the Dalhart Road property already had occurred. Therefore, the debtors' own testimony corroborates that the schedules filed with the Court were inaccurate as of the petition date due to the debtors' listing of the Dalhart Road property as being their current homestead. Not until January 6, 2005 did the debtors amend their schedules to reflect the existence of a bank account that contained the proceeds from the sale of the Dalhart Road property. Thus, the first three elements required under § 727(a)(2)(A) to warrant a denial of the

5

debtors' discharge have been established, with the remaining element being the debtors' intent as of the date of the transfer.

In order to find fraudulent intent, the Court can consider circumstantial evidence, or can infer fraudulent intent from the debtors' actions. *In re Griffith*, 206 F.3d 1389, 1396 (11th Cir. 2000). Badges of fraud are strong indicators of fraudulent intent. *General Trading Inc. v. Yale Materials Handling Corp.* 119 F.3d 1485 (11th Cir. 1997). While several badges of fraud can constitute conclusive evidence of fraud, a single badge of fraud may simply raise suspicion. *Id.* at 1498. The badges of fraud include: **(1)** lack of adequate consideration for the property transferred; **(2)** a family or close relationship between the parties; **(3)** retention of possession for use and benefit; **(4)** financial condition of the debtor; **(5)** cumulative effect of the transactions and course of conduct after onset of financial difficulties or threat of suit; and **(6)** general chronology and timing of events. *Id.* at 1498.

While many of the badges of fraud are present in connection with the debtors' concealment of the sale of the homestead and expenditure of the homestead proceeds, it is the general chronology and timing of the events surrounding the sale of the home and the retention of the sale proceeds for personal use and benefit which most strongly supports a finding that the debtors acted with fraudulent intent. The debtors knew that they had sold their homestead, yet nonetheless filed bankruptcy schedules indicating that they still were holding a homestead interest. The timing of the sale of the Dalhart Road property vis-a-vis the actual petition date, and the failure to reflect the sale upon their bankruptcy schedules, clearly indicate the debtors' fraudulent intent at the time of the concealment. Additionally, the debtors utilized those concealed funds for their daily living expenses, and there are no indicia that the debtors intended to reinvest those proceeds in a subsequent homestead. As such, the Court finds that denial of the debtors' discharge is warranted pursuant to § 727(a)(2).

**COUNT III: OBJECTION TO DISCHARGE, PURSUANT TO 11 U.S.C. § 727(a)(4)**

A debtor will be denied a discharge pursuant to § 727(a)(4) if he knowingly and fraudulently made a false oath or account. *Sperling v. Hoflund (In re Hoflund)*, 163 B.R. 879 (Bankr.N.D.Fla. 1993). To prevail in an action under § 727(a)(4), a plaintiff must establish the following elements by a preponderance of the evidence: **(1)** the debtor made a statement under oath; **(2)** that statement was false; **(3)** the debtor knew the statement was false; **(4)** the debtor made the statement with fraudulent intent; and **(5)** the statement related materially to the bankruptcy case. *Grogan vs. Garner,* 111 S. Ct. 654, 498 U.S. 279, 112 L. Ed. 2d 755 (1991); *Chalik v. Moorefield,* 748 F.2d 616 (11th Cir. 1984); *Stone vs. Bosse* (*In re Bosse*), 200 B.R. 419 (Bankr. S.D. Fla. 1996). Deliberate omissions from schedules or the statement of financial affairs may also constitute false oaths or accounts. *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991); *Chalik,* 758 F.2d at 618.

For a false oath to be considered material, it must be demonstrated that it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik,* 758 F.2d at 618. Additionally, the false oath or account must be made with the requisite intent, specifically a knowing intent to defraud creditors. *Swicegood*, 924 F.2d at 232. However, actual intent may be inferred from circumstantial evidence. *In re Martin,* 239 B.R. at 614 (Bankr.N.D.Fla. 1999).

The trustee alleges that the debtors' discharge should be denied under § 727(a)(4), based upon the debtors' false representations on their schedules and also at their § 341 meeting of creditors to the effect that they continued to own the Dalhart Road property, when in fact they had sold the property pre-petition. As of the petition date, the debtors no longer owned an interest in real property, but instead, held the proceeds from the sale of the Dalhart Road property in the Washington Mutual Bank account.

The debtors argue that the omissions as to the sale of the real property were unintentional as they had planned to file for bankruptcy prior to their decision to sell the homestead. Additionally, they testified that they were under the mistaken belief that they were permitted to utilize the proceeds for their living expenses without any ramifications as to their bankruptcy case. The debtors additionally believed that it was not urgent to update their schedules since the funds emanating from the sale of the Dalhart Road property were considered homestead funds that could be lawfully utilized by the debtors. In other words, the debtors felt it was not relevant to the bankruptcy estate whether they owned the homestead or utilized money flowing from the homestead. As such, the debtors contend that any omission was unintentional and without actual intent to defraud creditors.

After a thorough review of the evidence in this case, the Court finds that the debtor's discharge should be denied under § 727(a)(4). The Court finds that the debtors failed to provide full disclosure of their financial condition as of the petition date. The trustee has met her burden by a preponderance of the evidence that the debtors knowingly and fraudulently made a false oath or account in connection with their bankruptcy schedules. *Grogan v. Garner*, 111 S. Ct. 654, 498 U. S. 279, 112 L.Ed.2d 755 (1991).

The Court finds that the debtors have engaged in conduct repugnant to the notions of honesty and fair play required in order to warrant the issuance of a discharge. The purpose of § 727(a)(4) is to ensure that-

> those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather that fiction. . . . Neither the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight.

*Boroff v. Tully (In re Tully),* 818 F.2d 110, 112 (1st Cir. 1987). The debtors did not provide complete disclosure nor did they provide reliable information. The Court finds that the debtors knowingly made a false oath that was both fraudulent and material when they failed to disclose the sale of their homestead on their schedules and when they continued to utilize the homestead proceeds until depletion. As a result, the debtors caused the trustee to engage in precisely the "laborious tug-of-war" referenced in *Boroff*. Accordingly, the debtor's discharge shall be denied under § 727(a)(4).

### COUNT IV: OBJECTION TO DISCHARGE, PURSUANT TO 11 U.S.C. § 727(a)(6)(A)

On September 6, 2005 this Court entered its Turnover Order for the amount of $90,990.32, representing the proceeds from the sale of the Dalhart Road property. Turnover of these funds was to have occurred within 10 days from the date of the Order. The Turnover Order further provided that, to the extent the debtors did not or were unable to remit the sale proceeds to the trustee, the debtors were to provide an accounting with supporting documentation detailing any shortfall as to the sale proceeds, which also was to have occurred within 10 days from the entry of the Turnover Order.

The trustee contends that the debtors have failed to obey this Court's lawful order due to the fact that the debtors have failed to turn over any sales proceeds. Additionally, the trustee claims that she did not receive an acceptable accounting as to the utilization of proceeds until November 2005, well after the 10 days had passed.

The debtors testified that they believed the accounting which they initially provided to the trustee was sufficient and in compliance with this Court's Turnover Order. However, they testified that the trustee was not satisfied with the original documentation submitted by the debtors, thereby necessitating their expenditure of additional time to gather further documentation. The debtors further explained that they could not comply with the provisions in the Turnover Order requiring payment of funds because the entire $90,990.32 in sale proceeds had been expended prior to the entry of the Turnover Order.

After consideration of the arguments presented at trial, the Court concludes that the debtors' initial efforts, although arguably not exhaustive, did comply with the September 6, 2005 Turnover Order, and are not tantamount to a refusal to comply with a lawful order of the court pursuant to § 727(a)(6)(A). As such, the record does not support a denial of discharge pursuant to § 727(a)(6)(A).

### COUNT XI: AVOIDANCE OF UNAUTHORIZED POST-PETITION TRANSFER

The trustee seeks to avoid a transfer in the amount of $6,259.00 from the debtor to Crary Buchanan. The trustee alleges that the funds utilized to pay the debtors' legal fees derived from the net proceeds generated from the sale of the Dalhart Road property. The debtors testified that the source of an initial payment of $459 to Crary Buchanan derived from funds available prior to the sale of the homestead. However, the debtors further testified that they made two payments to Crary Buchanan stemming from the sale proceeds of the Dalhart Road property: $800 immediately following settlement on September 3, 2004; and $5,000 on December 3, 2004. The debtors identified the direct the source of the $5,000 payment as being an account maintained at Key Bank, held in the name of TG Angel Inc., the debtors' business. The debtors confirmed that the Dalhart Road property sale proceeds, initially deposited with Washington Mutual Bank, were subsequently transferred, in large part, to Key Bank Account Number 35251002584 (Pl. Ex. 9). The debtors stated that there were no other funds available from which to pay Crary Buchanan for their legal services, aside from those emanating from the sale of the Dalhart Road property.

Crary Buchanan counters the allegations made by the trustee, stating that Crary Buchanan was paid $1,259.00 prior to the petition date and prior to the sale of the Dalhart Road property. Crary Buchanan further states that they were paid $5,000 post-petition by TG Angel, Inc., which is owned by the debtors. As such, Crary Buchanan contends that they received no payments from the debtors post-petition.

A review of the debtors' Key Bank cancelled checks indicates that a $5,000 payment was made to Crary Buchanan by way of check number 2486, drawn on the Key Bank account, on

10

December 3, 2004 (Pl. Ex. 12) . The Court has determined that the $5,000 payment is the only payment which conclusively was paid from the Dalhart Road property proceeds. It is of no consequence that the Key Bank account was held in the name of TG Angel, Inc., as the debtors are the owners of TG Angel, Inc., and clearly controlled and benefitted from the bank transactions involving the Dalhart Road property proceeds. Indeed, the only funds deposited in the Key Bank account were derived from the sale of the Dalhart Road property. Accordingly, the Court shall enter a judgment against Crary Buchanan in the amount of $5,000.00 avoiding the unauthorized post-petition transfer pursuant to 11 U.S.C. § 549.

### COUNT XII: MONEY JUDGMENT

The trustee seeks a money judgment in the amount of $90,990.32 against the debtors, representing the non-exempt Dalhart Road property sale proceeds existing as of the petition date. The trustee contends, and the debtors acknowledge, that they utilized and expended $90,990.32 in homestead proceeds from the sale of the Dalhart Road property. The sales proceeds were non-exempt as they were not utilized for the purchase of a subsequent homestead. As such, the Court shall award a money judgment in the amount of $90,990.32 together with pre-judgment interest from the petition date. However, to the extent that the trustee is able to collect the $5,000 post-petition transfer made by the debtors to Crary Buchanan, the money judgment should be reduced to reflect such payment.

Pursuant to Bankruptcy Rule 9021, a separate judgment shall be entered.

###

Copies to:

**The Clerk of Court is directed to provide
a copy of this Order to all parties of record.**